IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE PETERSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 17-5227 |
| THE BOROUGH OF UPLAND, *et al.* | : | |

KEARNEY, J.                                                                                           June 6, 2018

## MEMORANDUM

Two judges and juries should not be separately addressing the claims between the same parties to one dispute. To achieve goals of judicial economy and finality of federal court judgments, Federal Rule of Civil Procedure 13 requires defendants who want to sue the plaintiff for conduct arising out of the same conduct is compelled to bring her claim in the suit in which she is a defendant. We today evaluate allegations against a defendant which are compulsory counterclaims in an earlier filed lawsuit filed by our defendant against our plaintiff now pending before Judge Joyner. The issue is whether we should dismiss these claims. We decline to dismiss. In the accompanying Order, we deny the defendant's motion for judgment on the pleadings and extend the discovery and trial deadlines to allow the parties to meaningfully address the proper parties to this suit.

I.   **Background**

   **A. Christine Peterson's allegations in this case.**

Christine Peterson began working for the Borough of Upland Police Department as a part-time employee in 2009.[1] In 2011, the Department promoted Ms. Peterson to a full-time administrative assistant.[2] Ms. Peterson also served as a Borough of Upland council member.[3]

While working for the Department and serving as a member of the Borough Council, Ms. Peterson became concerned about the interactions between Edward Mitchell, President of the Borough Council, and Nelson Ocasio, the Department's Police Chief.[4] Ms. Peterson believed Mr. Mitchell and Chief Ocasio schemed to steal Borough funds and property.[5] For example, Ms. Peterson believed Mr. Mitchell and Chief Ocasio stole $30,000 worth of camera equipment purchased by the Borough.[6]

Ms. Peterson told Mr. Mitchell and Chief Ocasio about her concerns. In response, Mr. Mitchell and Chief Ocasio threatened to fire Ms. Peterson and harassed and intimidated her to keep her quiet.[7] On one occasion, Mr. Mitchell reminded Ms. Peterson her mother lived in a housing project funded by the Borough and "it would be a shame if she didn't get to live there anymore."[8] On another occasion, Chief Ocasio brought Ms. Peterson's son, who suffered from mental health issues, to a gun shop and instructed him to purchase a gun.[9] Chief Ocasio instructed Ms. Peterson's son to falsify the required paperwork by not disclosing he suffered from mental health issues.[10] Shortly after, an unidentified person arrested Ms. Peterson's son for falsifying information on a government document.[11]

In August 2015, Detective Michael Irey of the Department took a family vacation.[12] Before leaving for vacation, Chief Ocasio and Detective Irey agreed by email Detective Irey could work on the weekends as "comp time" to make up for his time away on vacation.[13] Detective Irey forwarded Ms. Peterson the email chain between him and Chief Ocasio and asked Ms. Peterson to have Chief Ocasio sign off on his timecards while on vacation.[14] Ms. Peterson agreed.[15]

In January 2016, Ms. Peterson became the President of the Borough Council.[16] Unhappy his tenure as President ended, Mr. Mitchell "made it clear" to Ms. Peterson he would do

2

whatever it took to regain the position.[17] As President of the Borough Council, Ms. Peterson enjoyed greater access to information regarding Borough operations.[18] Ms. Peterson soon discovered what she believed to be a "pattern of corruption" where Mr. Mitchell acted as the "de facto mayor and police chief" of the Borough by systematically threatening, blackmailing, and bribing others and using Chief Ocasio as a "henchman."[19] Ms. Peterson believed Mr. Mitchell used a check cashing business to steal Borough funds.[20] Ms. Peterson also believed Mr. Mitchell stole Borough property and reported the property stolen in order to request funds from the Borough to purchase replacement property.[21] Rather than purchase replacement property, Mr. Mitchell stole the funds.[22] Mr. Mitchell instructed Chief Ocasio to help him hide evidence of the stolen property and funds.[23]

In February 2016, believing she could not stop Mr. Mitchell and Chief Ocasio on her own, Ms. Peterson told Borough Mayor Michael Ciach about Mr. Mitchell's and Chief Ocasio's conduct.[24] In response, Mayor Ciach demoted Chief Ocasio.[25] After learning of Chief Ocasio's demotion, Mr. Mitchell and Chief Ocasio told Ms. Peterson she would regret "opening up her fat mouth."[26] The same month, Ms. Peterson acquired evidence demonstrating an "ongoing fraud" and "kick-back scheme" involving Mr. Mitchell and employees of multiple technology companies, costing the Borough over $100,000.[27] Mr. Mitchell purchased recording devices from the technology companies and installed the devices throughout the Borough municipal building to record Ms. Peterson's and other's conversations.[28] Ms. Peterson shared her evidence with Mayor Ciach.[29]

Later the same month, Ms. Peterson arrived to her office and discovered a note on her desk from Chief Ocasio which stated "sorry" and included a drawing of handcuffs followed by "=u."[30] The same day, Chief Ocasio arrived at Ms. Peterson's office with a state police officer

3

and explained to Ms. Peterson he had a warrant for her arrest.[31] Confused and scared, Ms. Peterson suffered from a panic attack.[32] Ms. Peterson asked Chief Ocasio what charges she faced, but Chief Ocasio refused to answer.[33] According to the criminal complaint drafted by Chief Ocasio, Ms. Peterson's arrest arose out of the alleged timecard forgery from August 2015.[34]

With the symptoms of her panic attack worsening, Ms. Peterson instructed her co-worker to call Mayor Ciach, but Chief Ocasio instructed the co-worker not to make the call or face charges of obstruction of justice.[35] Chief Ocasio placed Ms. Peterson under arrest, handcuffed her, and escorted her to his police vehicle.[36] While in the police vehicle, Ms. Peterson explained to Chief Ocasio she was suffering from a panic attack, felt light headed, and was worried about her health.[37] Chief Ocasio ignored her complaints.[38]

Ms. Peterson asked "Patrolman Dougherty" to lower the window of the police vehicle because she had a difficult time breathing.[39] Knowing Ms. Peterson suffered from panic attacks in the past, Patrolman Dougherty lowered the window.[40] Chief Ocasio became "enraged" when he saw the open window and ordered Patrolman Dougherty to close the window, despite Ms. Peterson begging to leave the window open[41]

Chief Ocasio transported Ms. Peterson to the Pennsylvania State Police Barracks in Lima, Pennsylvania.[42] An unidentified person shackled Ms. Peterson to a bench and Ms. Peterson underwent a "video arraignment."[43]

Following arraignment, an unidentified person transported Ms. Peterson to Concord District Court for a bail hearing before District Justice Wendy Roberts.[44] At the bail hearing, Chief Ocasio requested Ms. Peterson not be allowed to contact Detective Irey as a condition of bail.[45] Based on this representation, Ms. Peterson believed Chief Ocasio and Mr. Mitchell

4

coordinated her arrest in retaliation to her investigations.[46] After her release from custody the same day, detectives from the Delaware County Criminal Investigation Division questioned Ms. Peterson.[47] Shortly after, the district attorney dropped all charges against Ms. Peterson.[48]

In March 2016, Mayor Ciach informed police detectives of the possibility of "covert" cameras in the Borough municipal building.[49] Police detectives conducted an investigation and discovered three cameras and three microphones, all of which Mr. Mitchell purchased through "sham approvals."[50] The detectives found cameras and microphones in the Borough secretary's office, the Borough Council's chambers, and two employee work stations.[51] Detectives discovered the devices recorded audio and video from late January through early March 2016.[52] Ms. Peterson believes Mr. Mitchell had the devices installed to "garner information" on his "political enemies," to gain leverage to continue his "pattern of corruption [and] racketeering, and to maintain control over his own personal fiefdom."[53]

In December 2016, an unidentified agency arrested Mr. Mitchell under suspicion of wiretapping and participating in a kick-back scheme using Borough funds.[54]

In November 2017, Ms. Peterson filed this case suing Chief Ocasio, Mr. Mitchell, and the Borough ("Peterson Action"). She asserts a host of constitutional and state law claims against Chief Ocasio. Ms. Peterson sues under 42 U.S.C. § 1983. Ms. Peterson claims Chief Ocasio subjected her to a pattern of abuse, filed false affidavit of probable cause against her, and used excessive force while arresting her. Ms. Peterson claims this conduct violated her Fourth, Eighth, and Fourteenth Amendment rights and Pennsylvania law. Ms. Peterson also claims Chief Ocasio's filed affidavit of probable cause in retaliation to her protected speech of reporting possible criminal conduct to Mayor Ciach in violation of her First Amendment rights. Ms. Peterson also sues Chief Ocasio under Pennsylvania state law for assault and battery, false arrest,

5

false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress claims.

### B. Allegations in Chief Ocasio's February 16, 2017 Complaint against Ms. Peterson.

Eight months before Ms. Peterson filed this case, Chief Ocasio sued Ms. Peterson, Mayor Ciach, and the Borough.[55] Chief Ocasio alleges he discovered Detective Trey submitted timecards for August 2015 which did not reflect vacation time Detective Trey took to travel to Duck Beach, North Carolina.[56] Chief Ocasio also noticed someone forged his signature on the inaccurate timecards.[57] Chief Ocasio believed Ms. Peterson to be the only other person with access, other than himself, to the Department's timecards to forge his signature.[58]

The same month, believing Ms. Peterson forged his signature on the inaccurate timecards, Chief Ocasio filed an affidavit of probable cause charging Ms. Peterson with forgery, theft by unlawful taking, and tampering with government records.[59] The same day, Mayor Ciach and Ms. Peterson suspended Chief Ocasio without pay.[60] The next day, Chief Ocasio met with Mayor Ciach and Ms. Peterson.[61] At the meeting, Mayor Ciach terminated Chief Ocasio as the Borough's police chief.[62]

Chief Ocasio sued Ms. Peterson, Mayor Ciach, and the Borough in this court in February 2017 ("Ocasio Action"), with Judge Joyner presiding. Chief Ocasio claimed Ms. Peterson violated his right to procedural due process by terminating him without "just cause" required by the collective bargaining agreement governing his employment.[63] Chief Ocasio claimed Ms. Peterson also violated his First Amendment rights and "Whistleblower law" by retaliating against him for filing a good faith affidavit of probable cause.[64] Finally, Chief Ocasio claimed Ms. Peterson conspired with Mayor Ciach to violate his constitutional and statutory rights. Chief Ocasio seeks compensatory damages, punitive damages, and injunctive relief in the form of

6

removing the notice of termination and any reference to being removed as police chief from his personnel file and reinstatement as the Borough's police chief.[65] The Ocasio Action continues before Judge Joyner.

## II. Analysis

Ms. Peterson sues Chief Ocasio under the First, Fourth, Eighth, and Fourteenth Amendments and under Pennsylvania state law for false arrest, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Chief Ocasio moves for judgment on the pleadings arguing the claims against him raised here should have been raised in Ms. Peterson's responsive pleading to the Ocasio Action as compulsory counterclaims.[66] Chief Ocasio argues Ms. Peterson's failure to raise the claims in her responsive pleading in the Ocasio Action requires we dismiss with prejudice the claims under Federal Rule of Civil Procedure 13. Chief Ocasio is partially correct; these are compulsory counterclaim and we are not required to dismiss the claims.

### A. Ms. Peterson's claims against Chief Ocasio should have been raised as compulsory counterclaims in the Ocasio Action.

Federal Rule of Civil Procedure 13(a) provides "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against the opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."[67]

Under Rule 13, we determine "whether the counterclaim 'bears a logical relationship to an opposing party's claim.'"[68] "[T]o qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim . . ."[69] A logical relationship exists "where separate trials on each of the[] respective claims would involve a

7

substantial duplication of effort and time by the parties and the courts."[70] "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties."[71] "The compulsory counterclaim inquiry thus requires essentially the same comparison between claims as the res judicata analysis."[72] Because judicial economy is the policy founding Fed. R. Civ. P. 13(a), the term "transaction or occurrence" is construed generously.[73] "The failure to plead a compulsory counterclaim bars a later independent action on that claim."[74]

Ms. Peterson claims in this case Chief Ocasio retaliated against her when she told Mayor Ciach she believed Chief Ocasio helped Mr. Mitchell steal Borough property and funds. Ms. Peterson alleges Chief Ocasio retaliated by filing a criminal complaint against her alleging she forged his signature on Detective Irey's timecard and falsified a government document, and arresting her. Ms. Peterson's alleges Chief Ocasio used excessive force in making the arrest.

In the first filed Ocasio Action, Chief Ocasio alleges only he and Ms. Peterson had access to Detective Irey's timecards and he did not sign the timecards at issue. As a result, Chief Ocasio concluded Ms. Peterson forged his signature. Chief Ocasio filed an affidavit of probable cause alleging Ms. Peterson committed forgery, theft by unlawful taking and tampered with government records. Chief Ocasio alleges Ms. Peterson immediately retaliated against him filing the affidavit of probable cause in good faith by terminating him as police chief.

Ms. Peterson's and Chief Ocasio's claims arise out of the alleged forgery of Detective Irey's timecards and Chief Ocasio charging Ms. Peterson with forgery and falsifying a government document. Ms. Peterson's and Chief Ocasio's claims largely stem from the other's conduct in direct response to Chief Ocasio criminally charging and arresting Ms. Peterson. Both

8

allege the other unlawfully retaliated because each engaged in protected speech under the First Amendment.

Chief Ocasio's claims are based on his termination as police chief, and Ms. Peterson's claims are based on her arrest and Chief Ocasio's conduct in making the arrest. We appreciate Ms. Peterson's and Chief Ocasio's claims require different proofs, but we construe the "transaction and occurrence" language in Fed. R. Civ. P. 13 liberally. The claims largely arise out of the same events and are at least "offshoots of the same controversy" between Ms. Peterson and Chief Ocasio. Separate trials would require separate courts and juries to assess the intent and merit of Ms. Peterson's and Chief Ocasio's conduct. For example, the merit of Ms. Peterson's and Chief Ocasio's claims are based in part on the veracity and the evidentiary support of Chief Ocasio's affidavit of probable cause against Ms. Peterson. Most of the parties' claims arise from the same transaction or occurrence – Chief Ocasio filing the affidavit of probable cause. Ms. Peterson's claims in part rely on Chief Ocasio's conduct before filing the affidavit of probable cause, but Rule 13 does not require a precise identity of facts to find Ms. Peterson's claims are compulsory counterclaims.

Ms. Peterson's claims against Chief Ocasio arise out of the same transaction or occurrence founding Chief Ocasio's claims in the Ocasio Action. They are compulsory counterclaims in the first filed Ocasio Action. Ms. Peterson's claims bear a "logical relationship" to Chief Ocasio's claims and are "offshoots of the same basic controversy." Both Ms. Peterson's and Chief Ocasio's claims are based on the same facts and separate trials would create a duplication of effort and time by the parties.

9

### B. We will extend deadlines for the discovery and trial in this case for a short period of time while the Ocasio Action is completed.

While Ms. Peterson's claims against Chief Ocasio are compulsory counterclaims in the Ocasio Action, "[n]othing in Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim."[75] Commentators suggest we should stay our proceeding once we learn our claims are compulsory counterclaims.[76]

While courts have dismissed when the compulsory counterclaim can be brought in or transferred to the first filed case, dismissal is a particularly harsh remedy here.[77] The Ocasio Action is presently finished discovery and Judge Joyner is reviewing summary judgment motions. After an extension, Judge Joyner has precluded further extensions and the matter is now in the trial pool should claims survive summary judgment.[78] Ms. Peterson may move to amend her answer in the Ocasio Action particularly given her allegations arise from the same facts.[79] But given her unexplained delay in so moving, particularly after filing this case in November 2017 when she could have easily brought her claims in the Ocasio Action, her motion to amend may be denied as untimely. We find no legitimate basis for her delay in bringing the compulsory counterclaims in the Ocasio Action but we decline to toss her potential claims out of court. Judge Joyner's considered analysis of the similar issues will also assist in this case. Dismissal here would visit legal prejudice upon Ms. Peterson, and we should avoid this result.[80] Conversely, we can find no prejudice in extending discovery for the Defendants.

We are also persuaded a stay is warranted here given co-defendant Mitchell is presently the subject of a criminal case involving some of the facts at issue. He is scheduled for trial shortly. While we could proceed piecemeal while Mr. Mitchell may invoke his Fifth Amendment rights, given Ms. Peterson's decision to delay in bringing her claims, we find she is

not unduly prejudiced. If she wanted to move her claims, she could have done so in the Ocasio Action.

## III. Conclusion

Ms. Peterson failed to raise her claims against Chief Ocasio as compulsory counterclaims in the Ocasio Action. We elect to extend deadlines in this case, rather than dismiss Ms. Peterson's claims against Chief Ocasio, for at least the short period of time to address the Ocasio claims (possibly including Ms. Peterson's amended answer). Given the substantial legal prejudice to her by our dismissal, we enter the accompanying Order extending the pre-trial and trial deadlines.

---

[1] ECF Doc. No. 1 ¶ 13.

[2] *Id.* ¶ 13.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 15.

[5] *Id.* ¶ 16.

[6] *Id.* ¶ 16.

[7] *Id.* ¶ 17.

[8] *Id.* ¶ 18.

[9] *Id.* ¶ 19.

[10] *Id.* ¶ 19.

[11] *Id.* ¶ 19.

[12] *Id.* ¶ 22.

[13] *Id.* ¶ 22.

---

[14] *Id.* ¶ 23.

[15] *Id.* ¶ 24.

[16] *Id.* ¶ 25.

[17] *Id.* ¶ 25.

[18] *Id.* ¶ 26.

[19] *Id.* ¶ 26.

[20] *Id.* ¶ 27.

[21] *Id.* ¶ 29.

[22] *Id.* ¶ 29.

[23] *Id.* ¶ 30.

[24] *Id.* ¶ 31.

[25] *Id.* ¶ 31.

[26] *Id.* ¶ 32.

[27] *Id.* ¶ 33, 55.

[28] *Id.* ¶ 34.

[29] *Id.* ¶ 35.

[30] *Id.* ¶ 36.

[31] *Id.* ¶ 37.

[32] *Id.* ¶ 38.

[33] *Id.* ¶ 39.

[34] *Id.* ¶ 51.

[35] *Id.* ¶ 40.

[36] *Id.* ¶ 41-42.

[37] *Id.* ¶ 42.

[38] *Id.* ¶ 42.

[39] *Id.* ¶ 44.

[40] *Id.* ¶ 44.

[41] *Id.* ¶ 44.

[42] *Id.* ¶ 45.

[43] *Id.* ¶ 45.

[44] *Id.* ¶ 46.

[45] *Id.* ¶ 46.

[46] *Id.* ¶ 46.

[47] *Id.* ¶ 49.

[48] *Id.* ¶ 52.

[49] *Id.* ¶ 53.

[50] *Id.* ¶ 54.

[51] *Id.* ¶ 54.

[52] *Id.* ¶ 56.

[53] *Id.* ¶ 58.

[54] *Id.* ¶ 59.

[55] *Ocasio v. Mayor Michael Ciach, et al.*, No. 17-755, ECF Doc. No. 1 (E.D. Pa. Feb. 16, 2017).

[56] *Id.* ¶¶ 12-14.

[57] *Id.* ¶ 13.

[58] *Id.* ¶ 16.

⁵⁹ *Id.* ¶ 17.

⁶⁰ *Id.* ¶ 26.

⁶¹ *Id.* ¶ 18.

⁶² *Id.* ¶ 18.

⁶³ *Id.* ¶¶ 21-30.

⁶⁴ *Id.* ¶¶ 31-59.

⁶⁵ *Id.* ¶¶ 67-72.

⁶⁶ A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial . . ." Fed. R. Civ. P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *Collinson v. City of Philadelphia, No.*, No. 12-6114, 2015 WL 221070, at *1 (E.D. Pa. Jan. 14, 2015) (quoting *S.B. v. United of Omaha Life Ins. Co.*, No. 13–1463, 2013 WL 2915973, at *3 (E.D. Pa. 2013)). The standard applied to motions under Rule 12(c) is the same standard as applied to motions to dismiss under Rule 12(b)(6). *Szczurek v. Prof'l Mgmt., Inc.*, No. 14-4790, 2014 WL 6388484, at *1 (E.D. Pa. Nov. 17, 2014). Rule 12(c) motion "should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

⁶⁷ Fed. R. Civ. P. 13(a).

⁶⁸ *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014) (quoting *Transamerica Accidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002)).

⁶⁹ *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389.

⁷⁰ *M.R.*, 744 F.3d at 121 (quoting *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389).

⁷¹ *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389.

⁷² *M.R.*, 744 F.3d at 121 (quoting *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 391).

⁷³ *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 390.

⁷⁴ *M.R.*, 744 F.3d at 121.

⁷⁵ *Adams v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

[76] *Id.* (citing 6 C.Wright. A. Miller & M. Kane, *Federal Practice and Procedure* § 1418, at 143 (2d ed. 1990 & Supp. 1991).

[77] For example, in *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-8171, 2015 WL 999981, at *6 (S.D.N.Y. March 5, 2015), the plaintiff had plenty of time to bring the claim as a compulsory counterclaim in the first action.

[78] *Ocasio,* ECF Doc. Nos. 18, 20.

[79] Ms. Peterson and her counsel swear she will move to bring his claims against Chief Ocasio in the Ocasio Action. ECF Doc. No. 30.

[80] *Inforizons, Inc. v. VED Software Servs.Inc.*, 2014 F.R.D. 116, 120 (N.D.Ill. 2001).